IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| CHRISTOPHER JOHNSON, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. **3:10-cv-01021-JPG-PMF** |
| MR DISMORE, *et al.*, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This matter comes before the Court on the defendants' affirmative defense of failure to exhaust administrative remedies. Also before the Court is the defendants' (Doc. 24) motion for summary judgment and the plaintiff's response thereto (Doc. 28). For the following reasons, it is recommended that the Court find that the plaintiff exhausted his available administrative remedies prior to filing this lawsuit and deny the defendants' (Doc. 24) motion for summary judgment.

### I. FACTS

At approximately 4 p.m. on June 12, 2010, the plaintiff, Christopher Johnson, an inmate at Lawrence Correctional Center ("Lawrence"),[1] and his cellmate, James Crouch, were served two packaged, dinner trays through the chuckhole of the prison cell that they co-occupied. Johnson received the trays and handed one to Crouch. After Johnson began eating from his tray of noodles and shredded chicken, he felt a sharp pain in the side of his cheek from a foreign object that was concealed in the food. The sudden pain caused Johnson to swallow whatever

---

[1] Lawrence is a correctional facility under the jurisdiction of the Illinois Department of Corrections ("IDOC").

1

food and other contents presently in his mouth. Johnson then felt the food and foreign object lodge into his throat, and he began to gag. He gasped for air and ran to the sink while Crouch attempted to get the attention of prison staff by pressing the call button and banging on the cell front. While leaning over the sink, Johnson continued to choke and gasp for air. The food and foreign object, along with blood, spewed out his mouth into the sink. The foreign object was a nickel-sized piece of flat folded metal, which was apparently part of a salt container.

Sometime later, after Lawrence staff had investigated the matter, Johnson was escorted to the Health Care Unit ("HCU"). While suffering extreme pain from the cuts in his cheek and throat, Johnson was seen by Nurse Sucher. Johnson was unable to verbally communicate with Nurse Sucher due to the pain in his throat. According to Johnson, Nurse Sucher did not ask when the last time Johnson had received a tetanus shot, did not refer him to a doctor for treatment, and did not schedule any follow-up treatment. After a brief visit, Johnson was sent back to the housing unit without pain medication.

## II. PROCEDURAL HISTORY

On December 16, 2010, Johnson filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against five named defendants and an unknown defendant. Doc. 1. On July 26, 2011, the Court conducted a preliminary review of the complaint pursuant to its authority in 28 U.S.C. § 1915A. *See* Doc. 11. In that order, the Court dismissed all but one defendant. *See id.* at 9. The Court found that a claim remained against defendant Sucher for deliberate indifference to serious medical needs. *See id* at 6-8. On December 2, 2011, defendant Sucher filed the instant motion for summary judgment raising the affirmative defense of failure to exhaust administrative remedies. *See* Doc. 24. The Court held an evidentiary hearing on defendant Sucher's affirmative defense on April 17, 2012. Doc. 46.

2

## III. DISCUSSION

The Court will first summarize the applicable law and will then evaluate the relevant evidence regarding the defendants' exhaustion defense:

### A. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with a lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their jursidiction are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830. The CAO

typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.* The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id*. With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues by conducting an evidentiary hearing. *See Pavey*, 544 F.3d at 740-42. The Court is permitted to make findings of fact and credibility assessments of witnesses at such an evidentiary hearing. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See Pavey*, 544 F.3d at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

(a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
(b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
(c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### B. Defendant Sucher's Evidence

In support of her argument that Johnson failed to exhaust his administrative remedies before filing this lawsuit, defendant Sucher originally submitted with her (Doc. 24) motion for

4

summary judgment the affidavit of Linda Allen, custodian of records for the ARB and three of six pages of records regarding the Johnson's exhaustion attempts. *See* Doc. 25-1. Defendant Sucher readmitted this exhibit at the April 17, 2012 evidentiary hearing with all six pages of records. *See* Doc. 45-5. The exhibit contains a grievance dated August 30, 2010, which was sent by Johnson directly to the ARB. *See id* at 6. The August 30 grievance complains, generally, that his prior grievances regarding the June 12, 2010, incident were thrown away or disregarded at Lawrence. *See id*. The August 30 grievance was returned to Johnson because it did not contain a Grievance Officer or CAO response at step two. *See id*. at 5.

Defendant Sucher had four other exhibits admitted at the April 17, 2012 evidentiary hearing, which the Court summarizes as follows:

1. An IDOC report titled "Cumulative Counseling Summary" by counselor Kevin L. Horton regarding inmate Christopher Johnson with entries from a date range beginning October 10, 2008 and ending February 21, 2012. *See* Doc. 45-1. The only relevant entry is dated "8/23/2010 11:00:02," which is entry regarding a face to face conversation with Johnson and Correctional Lieutenant Cecil W. Vaughn. *See id*. at 1. The entry states, "We discussed a grievance he says he has sent to level II. I told him if it is there he will get an answer." *Id*.
2. A report entitled "Emergency Inmate Grievance Log – 2010" containing entries from a date range beginning January 5, 2010 and ending December 30, 2010 (inmate names and numbers redacted). *See* Doc. 45-2. The report shows no emergency grievances filed by Johnson in the relevant time period. *See id*.
3. A report entitled "Grievance Log" containing entries from a date range beginning June 3, 2010 and ending October 28, 2010. (inmate names and numbers redacted). *See* Doc. 45-3. The report shows no grievances filed by Johnson in the relevant time period. *See id*.
4. The affidavit of Jon McDonald (Custodian of Records) attesting that the above reports are kept by Lawrence in the regular course of business, it is the regular course of business at Lawrence for an employee to make and transmit the reports, and the reports were made at or near the time of transmission. *See* Doc. 45-4.

Defendant Sucher also offered the testimony Jon McDonald, Correctional Counselor / Casework Supervisor at Lawrence, at the April 17, 2012 evidentiary hearing. McDonald

reiterated that Johnson's name did not appear in any of the above exhibits. He also testified as to the institutional mail system at Lawrence and described how grievances get to the grievance officer. McDonald also testified as to how grievances are submitted and handled during lockdowns.

### C. <u>**Plaintiff Johnson's Evidence**</u>

Attached to Johnson's complaint are copies of several resident requests after the June 12, 2010 incident, which are summarized as follows:

1) On August 16, 2010, Johnson sent a resident request addressed to "grievance officer" asking about the status of "three grievances I wrote that [haven't been responded to] on the dietary department about the metal object that was in my food on [June 12, 2010] that almost killed me and on one staff conduct and one on [the] medical treatment…" The grievance officer responded that Lawrence did not have a record of the grievance. Johnson was advised to speak to his counselor, Ms. Moran. *See* Doc. 1 at 8.
2) On August 24, 2010, Johnson sent a resident request addressed to Ms. Moran asking about the status of "three grievances I wrote on [June 17, 2010] that I haven't heard a response back from yet and [it has] been over 45 days and please don't tell me you've lost it..." Ms. Moran responded by stating that "I don't lose grievances, Mr. Jackson (sic), but I have not received any grievances from you." *See id*. at 13.
3) On September, 12, 2010, Johnson sent a resident request addressed to Warden Ryker asking about the status of a June 17, 2010 grievance. Johnson stated that he has never gotten response from the counselor or grievance officer, and he wanted to know why. Although the request was addressed to the warden, counselor Moran responded by stating that she did have any grievances from Johnson. *See id*. at 11-12.
4) On October 4, 2010, Johnson sent a resident request addressed to counselor Mr. Kittle asking about the status of a June 28, 2010 grievance regarding a metal object in his food. Johnson stated that he believed that the grievance was thrown away. On October 7, 2010, Counselor Kittle responded by stating that "I find no evidence that grievance was filed. *See id*. at 9-10.

Johnson provided testimony at the April 17, 2010 evidentiary hearing regarding the procedural aspects related to his grievances. Johnson repeated his allegations that he choked on a piece of metal on June 12, 2010 while incarcerated at Lawrence. Johnson testified that he

6

wrote a grievance on June 17, 2010 after he was able to obtain the necessary grievance form and placed the grievance in the designated "grievance box" on June 18 or 19 (after the cessation of an institutional lockdown) at Lawrence. He never got a response of any kind to this grievance. He then confronted counselor Reese about the missing grievance, and Reese told Johnson to rewrite the grievance. He placed this second grievance in the designated "grievance box" at Lawrence. Johnson stated that he got a response regarding the second grievance indicating the incident complained of was outside the 60-day window for prison grievances. Johnson testified that he sent another grievance directly to the ARB, which was returned because it was outside the 60-day timeframe provided by IDOC rules.

Johnson also testified at the April 17, 2010 evidentiary hearing as to the contents of the missing June 17 grievance. He indicated that he complained about the June 12 incident in his grievance. Johnson stated that he did not name defendant Sucher in the grievance because he did not know her name at the time. However, he did indicate that he complained about the treatment a nurse provided on June 12.

### D. Findings of Fact

The Court has evaluated all the evidence presented by both sides, including the credibility of witnesses that testified at the April 17, 2012 evidentiary hearing, and makes the following findings of fact:

1. Johnson wrote a grievance on June 17, 2010 regarding the events that transpired on June 12, 2010, which are described in PART I, *above*.

2. Johnson complained about the treatment he received from a nurse in the HCU at Lawrence on June 12 in the June 17 grievance.

3. Johnson did not name or provide a detailed, physical description defendant Sucher in the June 17 grievance.

7

4. Johnson placed the June 17 grievance in a designated "grievance box" at Lawrence on or around June 18-19 of 2010, after the cessation of an institutional lockdown.

5. Johnson's June 17 grievance was never recorded by Lawrence prison officials at step one or two of the grievance process.

6. Johnson's June 17 grievance was never received by the ARB at step three of the grievance process.

**E. <u>Analysis</u>**

As an initial matter, defendant Sucher argues that none of Johnson's resident requests (Doc. 1 at 8-13) identify or describe defendant Sucher, as required the IDOC's regulations regarding exhaustion of administrative remedies. This argument can be easily dismissed because none of the above resident requests are intended to be grievances and should not be construed as such. The resident requests summarized above are communications with Lawrence staff regarding the status of a grievance that Johnson's June 17, 2010 grievance. *See* Doc. 1 at 8-13.

Next, defendant Sucher argues that no grievance regarding the alleged June 12, 2010, incident was ever properly filed with the ARB. The Court agrees that Johnson's June 17 grievance never reached the ARB. *See* PART III.D.6. However, Johnson has asserted that he filed a grievance and the grievance was lost or not responded to by Lawrence prison officials. The fact that a grievance never made it to step three of the exhaustion process is not conclusive if Johnson can demonstrate that he exhausted the administrative remedies that were actually available to him. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citing 42 U.S.C. § 1997e(a); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001)); *see also Dale*, 376 F.3d at 656; *Dole*, 438 F.3d at 808-11.

8

The Court has no reason to question Johnson's credibility after evaluating Johnson's testimony at the April 17, 2012 evidentiary hearing. Johnson's demeanor was calm, and his answers to questions from the Court and opposing counsel were responsive and detailed, indicating that his testimony was truthful. The Court finds no reason to doubt Johnson's testimony regarding drafting and submitting his June 17, 2010 grievance into the "grievance box" at Lawrence. *See* PART III.D.1, 4. Similarly, the Court has no reason to doubt that Johnson complained in his June 17, 2010 grievance about the treatment he received in the HCU at Lawrence on June 12, 2010 from a nurse. *See* PART III.D.2. Johnson has more than just a bare allegation that he filed a grievance and it was lost. Johnson's resident requests, which are dated for time period subsequent to June 17, corroborate his testimony regarding his June 17 grievance. *See* Doc. 1 at 8-13. The contents of Johnson's August 30, 2010 grievance also back up his assertions.

Counsel for defendant Sucher did attempt to highlight a perceived discrepancy in Johnson's testimony that he wrote only one grievance regarding the events of June 12. Defendant Sucher pointed out that Johnson's resident requests refer to three grievances that Johnson wrote regarding the June 12 events. *See* Doc. 1 at 8-13. One resident request in particular states as follows:

> I'm writing to you in regard to three grievances I wrote that I haven't [gotten a response] to on dietary department about the metal object that was in my food on [June 12, 2010] that almost killed me and one on staff conduct and one on medical treatment.

*Id*. at 8. From this resident request, it would appear that Johnson wrote either 1) three separate grievances regarding the June 12 incident or 2) one grievance that contained a series of three, separate complaints. Johnson attempted to explain away this inconsistency by stating that he filed two more grievances regarding the June 12 incident after he was informed on two separate

9

occasions that his grievance was never received. Johnson continued by stating that both times he tried to re-file his grievance, the re-filed grievances were rejected as untimely. The undersigned does not find this perceived discrepancy damaging to the overall truthfulness of Johnson's testimony. The events in question occurred almost two years ago so Johnson cannot be expected to remember every detail. Additionally, it is still not clear whether Johnson initially wrote one grievance containing three, separate complaints or three, separate grievances.

The fact that Johnson did not name or provide a detailed, physical description of defendant Sucher in his June 17, 2010 grievance is not fatal. Johnson indicated that he didn't name defendant Sucher because he did not know her name. On questioning from opposing counsel, Johnson admitted that he did not attempt to describe defendant Sucher in any further detail. Rather, he just complained about treatment he received from a nurse at the HCU in Lawrence on June 12, 2010. IDOC regulations provide that a grievance must contain factual details regarding each aspect of the dispute, including "the name of each person who is the subject of or who is otherwise involved in the [dispute]." 20 Ill.Admin.Code § 504.810. That regulation goes on to provide that "[t]his provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." *Id*. Prisoners are required to comply strictly with all grievance rules established by the correctional authority. *See Dole*, 438 F.3d at 809. The general purpose of the administrative grievance system is to give the administrative agency an opportunity to resolve an issue internally before a lawsuit is filed. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted). Thus, the name/description requirement of the IDOC regulations helps achieve this purpose by giving the institution enough information to identify the staff member that a prisoner reportedly has an issue

with. Here, Johnson complained about a nurse that treated him in the HCU at Lawrence on June 12, 2010. The facts in the record demonstrate that defendant Sucher was the only nurse that Johnson visited on that day in the HCU. It can be assumed that the institution most likely records information about each visit that a prisoner makes to the HCU. Thus, it would not have been difficult for the institution to identify the nurse that treated Johnson in the HCU at Lawrence on June 12, 2010. Accordingly, the information that the Court finds Johnson provided in his grievance was practicable to identify defendant Sucher, and a detailed, physical description of defendant Sucher was not necessary in order to resolve the internal dispute in this case.[2] *See Glick v. Walker*, 385 Fed.Appx. 579, 582 (7th Cir. 2010) (finding, in an unpublished decision, that prisoners need identify prison officials and staff members only to the extent practicable).

Defendant Sucher's evidence is insufficient to demonstrate that Johnson failed to exhaust his available administrative remedies. Johnson's testimony regarding the placement of the June 17, 2010 grievance in the "grievance box" at Lawrence is credible. The fact that Johnson did not receive a response of any kind to the June 17 grievance and no record exists regarding the June 17 grievance leads the Court to conclude that Lawrence staff misplaced the grievance. The misplacing of the grievance at Lawrence rendered administrative remedies unavailable to Johnson. *See, e.g., Dole*, 438 F.3d at 812 (finding that administrative remedies were unavailable to pro se prisoner who claimed to have filed a grievance that IDOC prison officials had no record of).

---

[2] This does not mean that a detailed, physical description of a staff member is never required. The Court can envision a litany of examples where such a description would be highly appropriate. Based on the facts before the Court in this instance, however, the amount of information provided by Johnson is practicable to identify the staff member that he had an issue with regarding his medical treatment on June 12, 2010.

11

The Court has some reservations as to whether simply placing a grievance in the "grievance box" at Lawrence is sufficient to alert a prisoner's counselor in compliance with step one of the grievance procedure. However, defendant Sucher did not come forward with definite evidence that placing a grievance in the "grievance box" at Lawrence was, in any way, an improper method of alerting his counselor of a problem. Mr. McDonald provided some evidentiary background on the mail system at Lawrence but did not state affirmatively that placing a grievance in the "grievance box" was an inappropriate method of contacting a counselor regarding a problem. Rather, Mr. McDonald's testimony seemed to indicate that the counselors actually handle all of the grievance related mail placed in the "grievance box."

Accordingly, defendant Sucher has not persuaded the Court, by a preponderance of the evidence, that Johnson failed to exhaust his available administrative remedies.

## IV. RECOMMENDATION

For the forgoing reasons, it is recommended that the Court find that the plaintiff exhausted his available administrative remedies prior to filing this lawsuit and deny the defendants' (Doc. 24) motion for summary judgment.

**SO ORDERED.**

**DATED: April 24, 2012.**

*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE