IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER JOHNSON, #K60891, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-01021-PMF |
| ) | |
| MR. DISMORE, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM AND ORDER

**FRAZIER, Magistrate Judge:**

Before the court is defendant Nurse Debra Sucher's Motion for Summary Judgment (Doc. 89), the only remaining defendant in this action. Plaintiff Christopher Johnson filed a response in opposition (Doc. 95) and the defendant filed a reply to the response (Doc. 96). Johnson alleges that Nurse Sucher was deliberately indifferent to his medical needs and violated the Eighth Amendment. Nurse Sucher seeks summary judgment on the claim. Both parties consented to proceed before the Magistrate Judge (*See* Docs. 80 and 81). Upon reviewing the pleadings, the Court finds that the defendant is entitled to a judgment on the merits, and her motion for summary judgment is GRANTED.

## BACKGROUND

The events that form the basis of this litigation occurred while Johnson was an inmate at Lawrence Correctional Center. In the early evening hours of June 12, 2010 the plaintiff was eating dinner in his cell. Because the prison was on lockdown, meals were delivered on trays to the inmates. While eating, Johnson experienced a sharp pain on the left side of his mouth and he started choking. Noticing his distress, Johnson's cellmate came to his aid. This caused Johnson to expel the food he was eating, some quantity of blood, and a small metal object into the cell

sink. The metal object was later determined to be the spout off of a kitchen salt container. The cellmate then called out to the nearest officer for assistance and within a few minutes Johnson was led to the prison's health care unit.

At the health care unit Johnson was examined by Nurse Debra Sucher. Nurse Sucher's medical treatment that day forms the basis of the plaintiff's claim. After entering the examination room Johnson explained to Nurse Sucher that his mouth and throat were cut "really bad." He also told her that his mouth and throat were hurting. She then examined his mouth, and remarked to Johnson that she observed a small cut. In her notes she reported a 1/8 inch by 1/8 inch superficial abrasion on left side of the inner mouth area. After briefly looking into the plaintiff's mouth, she ended the examination and told Johnson to notify a prison officer if his mouth began bleeding again. No medications or further treatment were given at that time.

Following the incident Johnson continued to experience pain in his throat, particularly when attempting to swallow food and medication. Johnson was receiving medication for other unrelated reasons, and he told the nurses distributing the medication that he was still in pain from the June 12 incident. On a few occasions he refused the medication because he was unable to swallow. The nurses told him that he should make a request for sick call.

Johnson did put in a request for sick call, and on June 20, 2010 he was examined by Nurse Baker. She told him to gargle warm water and referred him to Doctor Fenoglio. Dr. Fenoglio examined Johnson on June 23 and remarked that the oral cavity was within normal limits, Dr. Fenoglio did not observe any lacerations or abrasions. Johnson was again seen by a nurse on July 8, 2010 after he complained of a sore throat. The nurse noted that his head, eyes, ears, nose, and throat were within normal limits. This was followed up by two more examinations by Dr. Fenoglio on September 8, 2010 and November 19, 2010

Finally on December 2, 2010 Johnson was examined by an outside ear, nose, and throat ("ENT") specialist. The ENT specialist observed a small lesion in the base of the tongue and recommended a laryngoscopy and biopsy. Nurse Sucher performed an examination a second time on January 7, 2011 as Johnson was on his way to see the ENT specialist for the biopsy. The biopsy was performed that day and the lesion turned out to be benign. Following the procedure Johnson was given medication for these issues. Prior to seeing the specialist he was not provided medication for the injury. Tylenol was available for purchase through the prison commissary, but Johnson lacked the funds necessary to do so. In addition to the pain associated with the incident, Johnson's voice has also changed as a result of the injury, although the record is unclear as to the extent or nature of the change. On December 16, 2010 the plaintiff filed this lawsuit, and now the defendant seeks summary judgment.

## LEGAL STANDARDS

Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). Summary judgment is not proper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

The Eight Amendment to the Constitution prohibits the infliction of cruel and unusual punishments on prisoners. U.S. Const. amend. XIII. An inmate's punishment "must not involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925, 49 L. Ed. 2d 859 (1976), and "deliberate indifference to serious medical needs of

prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

In order to establish that a prison staffer's deliberate indifference to an inmate's medical needs violated the Eighth Amendment, the plaintiff must demonstrate subjective and objective elements of proof. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The objective component is satisfied by an "objectively serious medical condition." The condition must be "sufficiently serious or painful to make the refusal of assistance uncivilized." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). The subjective component is satisfied by deliberate indifference and it requires a "sufficiently culpable state of mind." *Arnett*, 658 F.3d at 751. Deliberate indifference is a less demanding standard than purposeful, but it requires more than ordinary medical malpractice negligence. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "The point between these two poles lies where the official knows of and disregards an excessive risk to inmate health or safety or where the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he ... draws the inference." *Id*. (internal cites omitted). A prisoner who receives *some* treatment can still establish deliberate indifference, so long as the treatment received is "blatantly inappropriate." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)).

## DISCUSSION

Nurse Sucher asserts that the plaintiff failed to establish both elements, i.e., that the medical condition was not objectively serious and that she was not deliberately indifferent.

Here the Court finds no genuine dispute of material fact on both elements of the claim. No reasonable jury could reach a verdict for the plaintiff on the basis that his abrasion and sore

throat on June 12, 2010 were "sufficiently serious or painful to make the refusal of assistance uncivilized." Johnson briefly choked on the metal spout in his food, resulting in a sore throat, a superficial abrasion, and some bleeding. These undisputed facts do not suggest that his medical condition was objectively serious. This is supported by Nurse Baker's examination of the plaintiff on June 20, 2010. She also decided that his condition lacked the degree of seriousness that would warrant immediate treatment, and she recommended that he gargle with warm water.

The plaintiff's failure to establish the subjective component is also fatal to his claim. No reasonable jury could find that the defendant was deliberately indifferent to the plaintiff's medical condition. Within two to three minutes of choking on the salt spout, the plaintiff was brought to the Health Care Unit to be examined by Nurse Sucher. She examined the plaintiff and observed a 1/8 inch by 1/8 inch superficial abrasion, which corresponded to Johnson's statements that he received an injury after choking on the salt spout. Nurse Sucher made a medical judgment that painkillers and further treatment were unnecessary at that time, but she told Johnson to request sick call if his condition worsened.

Johnson contends that Nurse Sucher's examination of him should have been more thorough and that he should have received treatment for his pain. However, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Johnson fails to state would have been accomplished had he been given a more thorough exam. Nurse Sucher noticed the small superficial abrasion that was consistent with the plaintiff choking on the salt spout, and decided against giving him painkillers. While it is true that consistent ineffective treatment may rise to the level of deliberate indifference, *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Circ. 2011), Johnson's claim is based on the treatment received on June 12, 2010.  The defendant is not responsible or liable for the actions of

the later medical providers. Johnson is dissatisfied with the medical care received on June 12, 2010, but no reasonable jury could find that it was "blatantly inappropriate" so as to establish a genuine question of whether there was deliberate indifference.

## CONCLUSION

The defendant's motion for summary judgment demonstrates the absence of genuine issues of fact on the material elements of the plaintiff's claim. No reasonable jury could find that the defendant was deliberately indifferent to the plaintiff's medical condition. Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

**DATED:  September 10, 2014   .**

 s/  Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**